INDEPENDENT NEWS CO., Inc., National Comics Publications, Inc. Superman, Inc.

v.

Harry WILLIAMS.

Civ. A. No. 28140.

United States District Court
E. D. Pennsylvania.

June 28, 1960.

Goff & Rubin, by Alexander N. Rubin, Jr., Philadelphia, Pa., for plaintiffs.

William R. Pomerantz, Philadelphia, Pa., for defendant.

WOOD, District Judge.

1. The plaintiff, Independent News Co., Inc., is a New York distributor of magazines engaged in a $35,000,000 a year business throughout the United States. The plaintiff National Comics Publications, Inc., is the publisher of comic books under some 45 different titles. The plaintiff, Superman, Inc., owns the copyrights and trademarks covering the various titles and characters appearing in the said comic books.

2. The defendant, Harry Williams, is a Philadelphia distributor of secondhand books and magazines. He has in the past and does at present sell both covered and coverless comic books, some of which have been published and distributed by the plaintiffs.

3. The plaintiffs publish, sell and distribute their magazines as follows: The Independent News Co., Inc., sells comic books to local independent wholesalers at 5¾¢ per copy. The wholesalers in turn sell the comic books to retailers at 7½¢ per copy. At the end of a specified period of time the wholesaler is obliged under his contract with Independent (the distributor) to pick up unsold copies from its retailers. The wholesaler then credits the retailers 7½¢ for each such copy returned by the retailers.

The wholesaler is contractually bound to remove all or part of the cover from the returned copies and to destroy or mutilate these copies so as to render them

unfit for sale as magazines. The covers are then returned by the wholesaler to the Independent News Co., Inc., and the wholesaler is credited with 5¾¢ for each such cover returned.

The wholesaler under his contract with the distributor may sell the mutilated copies as wastepaper only, and is also obligated by his contract to obtain a written promise from the buyer of such mutilated copies that *he* will use them as wastepaper only.

4. The contracts between the plaintiff-distributor and its wholesalers provide that until the returned copies are so mutilated as to be unsalable as magazines the title to said copies remains with the distributor.

5. The defendant has never purchased returned copies, either coverless copies or covered copies, of comic books from any wholesaler under contract with plaintiff-distributor.

6. The defendant has obtained his comics primarily from wastepaper dealers.

7. There is no evidence that the defendant had any knowledge that any of the wastepaper dealers from whom he purchased were obligated to sell their coverless comics as wastepaper only.

8. There is no evidence that any of the wastepaper dealers from whom the defendant purchased coverless comics had, in fact, any contractual obligation to use such comics as wastepaper only.

9. The business of selling coverless comics has seriously injured plaintiffs' business for the following reasons:

(a) Each coverless comic, which is sold at approximately 3¢ a copy by the defendant, is a loss to the plaintiffs of a prospective sale which would have otherwise produced for plaintiff-distributor 5¾¢.

(b) The decrease in the volume of comics sold by retailers at the 10¢ price has injured the business of the wholesalers to the point of their threatening to discontinue handling plaintiffs' comics.

(c) Several supermarket chain stores have discontinued offering for sale comics at the 10¢ price, and have instead begun to offer for sale coverless comics at the cheaper price.

Conclusions of Law

1. The Court has jurisdiction over the parties and over the subject matter of this suit.

2. The defendant has not in the past and is not at present inducing any of plaintiff-distributor's wholesalers to breach their contractual obligations to the plaintiff-distributor.

3. The reservation of title to the plaintiff-distributor as contained in the contracts between the wholesalers and the plaintiff-distributor has no effect upon a buyer in the ordinary course of business without knowledge of such contractual provisions who purchases comics (with or without covers) from said wholesalers. Sperry & Hutchinson Co. v. Mechanics' Clothing Co., C.C.D.R.I. 1904, 128 F. 800, at page 803; 12A Purdon's Stat. § 2–403.

4. The defendant acquired good legal title to the coverless comics which he purchased in the ordinary course of business from various wastepaper dealers.

5. The plaintiffs' trademarks protect plaintiffs from any attempt of a third person to induce the public to believe that periodicals created and sold by that third person were created by plaintiffs. Plaintiffs' trademarks do not in any way prevent the sale by the defendant of comics originally published bearing plaintiffs' trademark, either with or without covers. 52 Am.Jur. §§ 83, 120.

6. The plaintiffs' copyrights give them the exclusive right to vend their copyrighted magazines, but this right is satisfied when the plaintiffs sell these magazines to their independent wholesalers. The Federal copyright statutes do not prohibit the *resale* of copyrighted magazines by anyone at any price. Fawcett Publications, Inc. v. Elliot Pub. Co., Inc., D.C.S.D.N.Y.1942, 46 F.Supp. 717; 17 U.S.C. § 27; 34 Am.Jur. §§ 67, 89.

7. Whether or not the notice printed at the bottom of the first page of plain-

tiffs' comics (to the effect that the comics may not be sold except by authorized dealers, etc.) amounts to a "limited publication" under common law copyright law is immaterial, since the common law protects the owner of copyrightable material from any *reproduction* of his work and not from a *resale* of what he has produced. 34 Am.Jur. § 67.

8. The defendant's business does not amount to unfair competition.

## Discussion

■ The plaintiffs have set forth six different legal theories, each of which they contend provides a sufficient basis for us to issue a preliminary injunction (and subsequently a permanent injunction) restraining the defendant from selling return copies of comic book magazines published and distributed by plaintiffs. We have studied every case cited by plaintiffs in support of these theories. Our conclusion at this stage of the case is that the only theory upon which we *could*, as a matter of law, grant the injunction is the theory of unfair competition.

Even were we convinced that the defendant has been competing unfairly with the plaintiffs, our inquiry could not end there. We must balance the equities between the parties, and consider the public interest, before exercising our discretion in granting or withholding the injunction.

We considered first the merits of plaintiffs' argument of unfair competition. Plaintiffs say that the salability of their comics is created by their expenditures in hiring top flight illustrators, writers, and advertisers. The return copies of these comics which are sold by the defendant are copies from which plaintiffs have not received a single penny. When the defendant sells these return copies, he is profiting unfairly, say plaintiffs, from plaintiffs' efforts. Plaintiffs rely upon the case of International News Service v. Associated Press, 1918, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211.

In that case the Supreme Court held that it was unfair competition for the International News Service reporters to copy and sell to INS member newspapers news which had been gathered by Associated Press reporters.

But we think the case at bar is readily distinguishable from the Associated Press case. The defendant here *purchased*, in the ordinary course of business, back issues of comics from wastepaper dealers. He acquired good title to these comics, and was free to dispose of them as he saw fit. Our own opinion is that there is nothing unfair to plaintiffs in defendant's business. We do, however, recognize that this is a matter upon which reasonable minds could differ, and certainly as a matter of law, the question of whether this constitutes unfair competition was, before this moment, unanswered. Therefore, we thought it proper to consider the balancing of the equities before deciding whether to grant or deny the preliminary relief.

At the outset we note that were we to enjoin the defendant from selling plaintiffs' comics, he would be required to sort through millions of magazines presently in his warehouse in order to pick out plaintiffs'. The selling of return copies of comics has been going on for twenty years. The time that will elapse between now and our final decision will certainly not be crucial to plaintiffs' business were we to refuse relief, but could well be seriously harmful to defendant's business were we to grant relief.

But most important, we think that it is not our function to invade the free enterprise system unless the law *clearly* directs. We recognize the plaintiffs' desire to have return copies destroyed as a perfectly legitimate goal. But if plaintiffs are to accomplish this goal it will have to be without our assistance.

## Order

And now, to wit, this 28th day of June, 1960, It Is Ordered that the plaintiffs' motion for a preliminary injunction is hereby Denied.