INDEPENDENT NEWS CO., Inc., National Comics Publications, Inc., and Superman, Inc.

v.

Harry WILLIAMS.

Civ. A. No. 28140.

United States District Court
E. D. Pennsylvania.

Sept. 29, 1967.

John B. Hannum, Philadelphia, Pa., for plaintiffs.

William R. Pomerantz, Philadelphia, Pa., for defendant.

OPINION

FULLAM, District Judge.

Plaintiffs brought this action in 1960 to require the defendant to refrain from dealing in back issues of plaintiffs' comic books, allegedly obtained by the defendant from wastepaper dealers after the cover pages had been removed. The case came on for a hearing on plaintiffs' application for a preliminary injunction, before Judge Wood of this court. After a full hearing, Judge Wood filed extensive and detailed findings of fact and conclusions of law, and denied the motion for preliminary injunction. Independent News Co., Inc. v. Williams, 184 F.Supp. 877 (E.D.Pa.1960). Plaintiffs sought various amendments to and reconsideration of the findings and conclusions, and ultimately appealed Judge Wood's decision to the Circuit Court of Appeals. In their brief on appeal, plaintiffs asserted that the facts were not in dispute, and that the sole questions to be decided were questions of law. Both before Judge Wood and on appeal, plaintiffs advanced all of the following theories of recovery: tortious conversion of plaintiffs' property, trademark infringement, copyright infringement, unfair competition, invasion of privacy, and tortious interference with contract rights. The Circuit Court considered and rejected all of plaintiffs' arguments and affirmed Judge Wood's decision. Independent News Co., Inc. v. Williams, 293 F.2d 510 (3d Cir. 1961).

So far as the record discloses, the litigation remained dormant for some time thereafter, but ultimately was brought on for trial. By reason of Judge Wood's engagement in protracted litigation at the time, the case was, with the approval of counsel, transferred to the

undersigned for trial and final disposition.

In view of the complete and detailed findings previously made in this case, and upheld on appeal, I deem it unnecessary to repeat or restate the facts of the case. While technically these findings and legal conclusions are open to reconsideration at this time, notwithstanding their affirmance on appeal. Pennsylvania Turnpike Commission v. McGinnes, 169 F.Supp. 580 (E.D.Pa.1958), there is no justification in the present record for reversing any of the findings or conclusions previously expressed. Cf. Yonkers Raceway, Inc. v. Standardbred Owners Ass'n, 21 F.R.D. 3 (S.D.N.Y.1957).

On the basis of the further evidence presented at the trial before me, I now enter the following:

## SUPPLEMENTAL FINDINGS OF FACT

1. Since the Court of Appeals decision in 1961, the plaintiffs have notified all wastepaper dealers known to be purchasing the remains of plaintiffs' cover-removed comic books from plaintiffs' wholesalers, that plaintiffs' contractual arrangements with their wholesalers require that these books be rendered illegible before resale.

2. By reason of this litigation, the defendant does now know, and has known since 1960, of the existence of the contractual arrangements between plaintiffs and their wholesalers, referred to in Supplemental Finding No. 1, above.

3. There is no evidence that the defendant has purchased any of the plaintiffs' cover-removed comics from wastepaper dealers or wholesalers, or solicited such purchases, for several years.

4. The cover-removed comic books which defendant now sells are purchased from legitimate sources, principally from other publishers who have released them to defendant for such resale.

5. Plaintiffs' cover-removed comic books are not readily distinguishable from those of other publishers. They bear no prominent legend or other identifying mark, and many bear no legend at all. In many cases, accurate identification requires detailed knowledge of plaintiffs' advertising policies; that is to say, certain advertisements are carried in various plaintiffs' publications, and not in the publications of other publishers.

6. Because of the nature of the product involved and the manner of handling returns, it frequently happens that a bale or other large package of cover-removed comics which defendant purchases from another publisher for resale may contain some of plaintiffs' cover-removed comics. It would be difficult, unduly burdensome, and not economically feasible, for the defendant to sort through the quantities of cover-removed comics thus acquired in order to eliminate the books of the plaintiffs' thus inadvertently included.

7. The evidence in this case is insufficient to establish a basis for determining whether or not the plaintiffs have suffered pecuniary loss as a result of defendant's activities and, if so, the amount thereof.

The legal contentions of the parties have all been fully considered and disposed of in the earlier proceedings, and require no further discussion here. Moreover, as indicated in the foregoing findings, the course of events since 1961 provides further justification for the conclusion that injunctive relief would be inappropriate in this case. Plaintiffs have a legitimate interest in seeing to it that their wholesalers and distributors live up to their contractual commitments; and it is now clear that the violations originally complained of have been virtually eliminated by the simple step of informing the wastepaper dealers and reminding the wholesalers of the existence of these contract provisions. Cf. Butterick Pub. Co. v. F.T.C., 85 F.2d 522, 526 (2nd Cir. 1936). Injunctive relief against this defendant appears to be presently unnecessary. Furthermore, it would represent a circuitous and indirect approach toward the same goal which could more readily be accomplished by di-

rect action against the contracting parties. Injunctive relief would obviously involve serious problems of enforcement, especially in view of the extreme difficulty of identifying plaintiffs' products; a difficulty which, it should be noted, stems from plaintiffs' own distribution methods.

Plaintiffs regularly and habitually publish and distribute more than double the number of comic books which they anticipate selling. They then accept the return of only the cover, or a portion of the cover, for credit, and exercise little or no supervision over the disposition of the books themselves. Having thus demonstrated their own views as to the economic significance of these remnants, plaintiffs can hardly complain when courts are reluctant to undertake injunctive supervision of the industry.

Under all of the circumstances, I have concluded that the complaint should be dismissed. Of course, this does not mean that the defendant has any right knowingly to encourage others to violate their contracts with the plaintiffs. The court will retain jurisdiction to deal with any such conduct which may be established.