**AMERICAN INTERNATIONAL PICTURES, INC., et al., Plaintiffs,**

v.

**Evan H. FOREMAN et al., Defendants.**

**Civ. A. Nos. 6809–71–T—6815–71–T.**

United States District Court,
S. D. Alabama S. D.

Aug. 7, 1975.

Irvin J. Langford and George W. Finkbohner, Jr., Mobile, Ala., Herbert Earnshaw, New York City, for plaintiffs.

Harry H. Riddick and Joseph M. Allen, Jr., Mobile, Ala., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

DANIEL HOLCOMBE THOMAS, Senior District Judge.

This action was commenced August 19, 1971, by the seven plaintiffs [1] against Evan H. Foreman, doing business as 16mm Filmland, alleging infringement of copyrights claimed by the respective plaintiffs in various motion pictures. The seven complaints, identical except as to the specific motion pictures on which infringement is alleged,[2] assert in the first cause of action that the defendant has offered to deal in specific motion pictures copyrighted by the respective plaintiffs and that he has sold prints of these pictures. These actions, according to the plaintiffs, constitute an infringement of their copyrights because they were without authority from the plaintiffs. In addition to these allegations of infringement on specific films, the plaintiffs further claim that the defendant committed other infringements by dealing in and selling positive prints of other copyrighted motion pictures belonging to or released by the plaintiffs. For these alleged infringements, the plaintiffs seek a permanent injunction against the defendant preventing him from selling or dealing in any copies or positive prints of copyrighted motion pictures owned or released by plaintiffs, damages and costs.

In a second claim for relief, the plaintiffs assert that the activities of the defendant constitute unfair and unlawful competition to the plaintiffs.

The defendant admits that, of the one hundred twenty (120) separate motion pictures on which infringement is alleged, he has acquired and sold prints of forty (40).[3] The defendant, however, denies that the sale of prints of these forty (40) films constitutes copyright infringement or unfair competition.

This case was regularly set down for trial on December 2, 1974, and for argument on May 16, 1975. After hearing and considering the evidence and arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. Each plaintiff is a corporation organized and existing under the laws of a State of the United States. The defendant, Evan H. Foreman, is a resident of Mobile, Alabama, and since 1969 has operated a sole proprietorship under the name of 16mm Filmland through which he buys and sells 16mm motion picture prints.

2. As to each of the specific films on which infringement is alleged, the Court finds that each respective plaintiff is the copyright proprietor of the copyright on the motion pictures on which specific infringement is alleged or is authorized to take action with respect to copyright infringement on such motion pictures.

3. Of the combined total of one hundred twenty (120) films on which infringement is alleged, the defendant has purchased and resold prints of at least forty (40) of the films. Included in these forty (40) pictures are at least one picture on which each plaintiff alleges infringement except for Metro-Goldwyn-Mayer, Inc., plaintiff in Civil Action No. 6811.

4. Each of the plaintiffs claims that it has never sold or given away any print of any of the motion pictures on which infringement is alleged or on which it claims copyright and that it has never authorized the defendant to acquire or sell any such print. The defendant, on the other hand, argues that these seven plaintiffs have, in transactions which constitute "first sales" under § 27 of the Copyright Act (17 U.S.C. § 1 *et seq.*), placed thousands of 16mm feature length

1. These seven separate actions were consolidated for trial by order of this Court dated August 30, 1971.

2. See Appendix A appended hereto.

3. See Appendix A.

motion picture prints into legitimate commerce. Essentially he argues that such a vast number of "first sales" together with the presumed lawfulness of his possession of the film prints in question, entitles him to judgment absent a showing that one of the prints which he sold had been stolen, lost or illegally duplicated.

5. Each plaintiff produced one witness who testified that to his or her knowledge no 16mm feature length print of a motion picture on which it claimed copyright had ever been sold or given away. The Court finds that there were significant gaps in the experience and knowledge of each of the plaintiffs' witnesses which substantially detracted from the persuasiveness of their testimony. Many of the motion pictures on which infringement was alleged were first released years prior to the dates the various witnesses commenced employment with their respective companies. Many films were first distributed in the 1930's years before some witnesses had any involvement with these plaintiffs whatsoever. While this fact does not disqualify such witnesses' testimony, it does effect the persuasiveness of such testimony. Most of the witnesses had little or no experience in syndicated television distribution. While this would not necessarily render incompetent any testimony they might give as to television distribution practices, the persuasiveness of such testimony is again effected. The defendant's evidence indicated that nearly half the prints in circulation among film collectors nationwide were formerly television prints.

6. The evidence adduced in this case reveals that the hobby of film collecting is quite popular in the United States, and that there are some 6,000 such collectors nationwide. There is no way one can make a competent estimate of the number of 16mm motion picture prints which have been purchased by collectors and others. But, from the catalogs and brochures received in evidence, the number may conservatively be placed in the thousands.

7. The Court further finds that the plaintiffs, in distributing or in otherwise disposing of 16mm feature length motion picture prints have employed a variety of methods. American International Pictures, Inc. (AIP), for example, has distributed great numbers of prints to television stations throughout the country. These distributions frequently are governed by instruments which, in legal effect, give the recipient stations much greater rights with regard to the prints distributed than a mere lessee of the prints would have. Many of these instruments which were received into evidence did not use the term "lease" but, rather, used the term "purchase" in referring to the station's acquisition of a print. (D. Ex. 47-A) Another such contract, in the form of a letter from the station to AIP provides:

"Upon the completion of the term of this agreement, we shall offer all prints *purchased* by us to you, and *you may purchase* said prints at terms to be mutually agreed upon." (D. Ex. 47-R) (Emphasis added).

This same letter contract provides that "We (the station) shall have the right to ship said purchased prints to any of our own television stations. . . ."

8. In its annual reports to stockholders for the last four years, AIP has listed revenues from the "sale of prints". An official of AIP, whose testimony was introduced by deposition, testified that this meant that "they have sold some prints. . . ." (Tr. 252) The only person produced by AIP to testify at trial was an assistant treasurer who did not rebut this testimony concerning the meaning of this entry on the financial statement.

9. Columbia Pictures Industries, Inc. (Columbia) has sold numerous 16mm feature film prints to film salvage dealers in the New York City-Long Island area in return for cash payment by the film salvage dealers.

10. Additionally sales of 16mm feature length prints of motion pictures on which Columbia claims copyright are sold

to the general public by a large New York City film library which, according to the testimony adduced at trial, is authorized, not only by Columbia but by all the plaintiffs in this action, to sell prints on which they claim copyright. There was received into evidence at trial a 16mm feature length print of a motion picture [4] on which Columbia claims copyright which had been purchased from this film library during the pendency of this litigation. Thus, by dealings with salvage companies and through the activities of its authorized sales representative in New York, Columbia has effected sales of 16mm feature length motion picture prints on which it claims copyright.

11. Metro-Goldwyn-Mayer, Inc. (MGM) has likewise effected sales of 16mm feature length motion picture prints through this same film library and has utilized television distribution agreements similar to those used by AIP. Here again there was received into evidence a 16mm feature length print of a motion picture [5] on which MGM claims copyright which had been purchased from this film library during the pendency of this litigation. Many MGM television contracts also provide for the purchase of prints by stations for prices which vary according to the expense involved in manufacturing the print. The "Price Per Print" paid by the station is always in addition to the fee paid to MGM for the right to exhibit the motion picture imprinted on the film.

12. Twentieth Century Fox Film Corporation (Fox) utilizes many of the distribution procedures used by other plaintiffs but also employs other procedures which, insofar as the evidence produced at trial would indicate, are unique to it. The same film library which is authorized to sell the various plaintiffs' films and which sold the Columbia and MGM prints mentioned above likewise has sold the Fox product. As was the case with MGM and Columbia, a 16mm feature length print of a motion picture [6] which Fox claims copyright was purchased from this source and introduced into evidence at trial.

13. In addition to these authorized print sales, Fox delivers film prints to various other companies under terms which go far beyond those of a mere lease. For a number of years, Fox has had a contract with a company known as National Telefilm Associates (NTA) under the terms of which Fox, for a consideration, has delivered to NTA a considerable number of master duplicating prints from which *negatives* of 16mm feature length motion pictures are made. From these negatives, positives are made. The prints thus made belong to NTA. From the evidence adduced, it would appear that Fox retains no possessory or proprietary interest in them whatsoever. Fox's Director of Global Print Operations testified that neither NTA nor the manufacturing laboratory accounted to Fox for the disposition made of these prints.

14. Similarly Fox has authorized other companies to order prints from an independent laboratory to which negatives of motion pictures on which Fox claims copyright have been delivered. The authorized companies, for a consideration, then have the right to order unlimited quantities of positive prints from the laboratory. No accounting is due to Fox for these films.

15. Walt Disney Productions (Disney) has distributed films on which it claims copyright in much the same manner as the other plaintiffs. For instance, a contract between Disney and Radio Pictures, Inc. (RKO) dated April 13, 1953, relating to "The Sword and the Rose" was received into evidence. Under the terms of this contract Disney

4. This picture is not among those listed in Appendix A.

5. This picture is not among those listed in Appendix A.

6. This picture is not among those listed in Appendix A.

was to deliver a 16mm negative of this film to Technicolor Laboratory with authorization for RKO to order prints of the film. RKO was to advance the cost of the prints so ordered and was to be subsequently reimbursed from the proceeds of the contract. The contract also provided that unserviceable prints could be junked.

16. Film prints on which Universal City Studios, Inc. claims copyright are also sold with authorization by the same film library in New York City mentioned above. Indeed catalogs and brochures received in evidence at the trial of this cause listed for sale some thirty separate titles of 16mm feature length motion pictures on which this plaintiff claims copyright.

17. The same is true of United Artists Corporation (UA). But in addition to sales of motion picture prints which it releases by the same film library, it has engaged in the business of openly selling 16mm feature length motion picture prints to the general public and has actively encouraged the hobby of film collecting. These sales have customarily been termed "life-of-print" leases but a review of those transactions leaves little doubt but that, in reality, they are nothing more than sales. The customer makes but a single lump sum payment to UA and, in return, receives a 16mm print which he is not obligated to return. Frequently in correspondence soliciting such purchases, UA officials have advised prospective customers that they could *"own films"* or that *"we can sell you a good used black and white print. . . ."* (Emphasis added). In explaining the "life-of-print" lease to one customer, a UA official wrote that:

"In the event of your death, the print will become the property of your heirs as provided for in your will." (D. Ex. 6)

18. Neither the plaintiffs nor the defendant are able to produce an abstract or prove a chain of title to the prints which the defendant sold. The plaintiffs have failed to show that these specific prints did not enter commerce legitimately (i. e., that they were stolen, lost or illegally copied). The defendant has not proven that the prints did enter commerce legitimately. Therefore, the central question of this case is whether the plaintiffs should be required to prove that the film prints which the defendant sold were not the products of "first sale" transactions entered into by the plaintiffs or their agents, or whether the defendant should be required to trace his chain of title for each film print back to one of the plaintiffs or their agents. For the reasons set forth hereinafter the Court finds that this burden of proving that the defendant did not have lawful possession of the prints in question should be on the plaintiffs.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of this action pursuant to 17 U.S.C. § 101 *et seq.* Venue is properly laid in the United States District Court for the Southern District of Alabama.

2. The Copyright Act (17 U.S.C.) was passed by Congress pursuant to the authority contained in the United States Constitution, which grants to Congress the power:

To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries. (Art. I, Sec. 8, Cl. 8.)

As the language of the clause itself makes clear, the primary purpose of a copright is "not to reward the author, but is rather to secure the general benefits derived by the public from the labor of authors." Nimmer on Copyright, Vol. 1, § 3.1 (1975); citing, *Fox Film Corp. v. Doyal*, 286 U.S. 123, 52 S.Ct. 546, 76 L.Ed. 1010 (1932).

3. Pursuant to this grant, Congress has enacted a comprehensive copyright statute (17 U.S.C., § 1 et seq.) which gives to the copyright proprietor

the right to "print, reprint, publish, copy, and vend the copyrighted work." (17 U.S.C. § 1(a)). The right to vend, with which this case deals, is a limited right. Section 27 of the Copyright Act provides in pertinent part:

".  .  .  .  nothing in this title shall be deemed to forbid, prevent, or restrict the transfer of any copy of a copyrighted work the possession of which has been lawfully obtained."

This section forms the statutory basis for the doctrine known as the "first sale" doctrine, which holds that the exclusive right to vend is limited to the first sale of any one copy and exerts no restriction on the future sale of that particular copy. *Fawcett Publications, Inc. v. Elliot Pub. Co., Inc.*, 46 F.Supp. 717, 718 (D.C.N.Y.1942).

■■ 4. As pointed out earlier, the issue presently before this Court is which party has the burden of proof with respect to the occurrence or non-occurrence of such a "first sale" of the particular motion picture prints upon which the plaintiffs allege infringement. Not uncommon to copyright litigation, there are apparently no precedents specifically addressing themselves to this issue of burden of proof. However, it is clear that, although often assisted by presumptions, the plaintiff must bear the burden of proof with respect to the elements necessary to his action for infringement. Plaintiff's proof, reduced to its most fundamental terms, consists of two elements; ownership of the copyright by the plaintiff and copying or vending by the defendant. Nimmer on Copyright, Vol. 2, § 139 and § 141 at 611 (1975).

5. Although well aware of the general rule of statutory construction that the burden of proof is on one claiming the benefit of a proviso or exception to an enacting clause, the Court is of the opinion that the wording of Section 27 of the Copyright Act as set out above in Paragraph 3 should not be construed to be either a proviso or an exception to the enacting clause, Section 1. To the contrary, for the purposes of this action, such wording is more in the nature of a limitation upon, or definition of, the term "to vend" as used in Section 1. Accordingly, the Court is of the opinion that the non-occurrence of a "first sale" is part and parcel of the second element of a plaintiff's infringement action, i. e., vending by the defendant, and that therefore a plaintiff must bear the burden of proof with respect to it.

■ 6. This allocation of the burden of proof is consistent with that policy of the law which seeks to provide for the free circulation of goods in commerce. To facilitate this goal, possession of property is always presumed lawful.

"Possession of property is indicia of ownership, and a rebuttable presumption exists that those in possession of property are rightly in possession. Under the common law of statutory provisions declaratory of the common law, a rebuttable presumption of ownership arises from possession of real property, and from the possession of personal property, unless the ownerhip of the property is conceded to be in some one else." 73 C.J.S. Property § 17, pp. 211-212.[7]

Therefore, one asserting a title has the burden of establishing it.

"The burden is on one alleging divestiture of another's ownership of property to prove it clearly, and one seeking to dispossess the possessor of personal property has the burden of showing title and right to do so." 73 C.J.S. Property § 17, p. 213.

Furthermore, this allocation is consistent with the limited scope of a copyright proprietor's statutory monopoly which "reflects a balance of competing claims upon the public interest: Creative work is to be encouraged and rewarded, but private motivation must ultimately serve the cause of promoting

7. See also, 29 Am.Jur.2d, Evidence § 235, p. 284; 63 Am.Jur.2d, Property § 36, p. 321.

broad public availability of literature, music and the other arts." *Twentieth Century Music Corp. v. Aiken,* 422 U.S. 151, 95 S.Ct. 2040, 45 L.Ed.2d 84 (1975). The practical and undesirable effects on "public availability" resulting from a ruling that all those in the defendant's position are copyright infringers unless they can bear the burden of tracing their chain of title back to a "first sale" by the copyright proprietor are self-evident.

7. In their trial briefs and arguments, the plaintiffs argue that a recent unreported order arising out of another district court[8] is authority for a contrary holding to the effect that the burden of proof must be born by the defendant. Even if this Court felt compelled to follow such authority, a close reading of that order reveals that that court, although not specifically addressing the issue, actually placed the burden of proof on the plaintiff but thereafter found that, after considering the specific evidence presented to it, the plaintiff had met his burden and the defendant had been unable to go forward with the evidence in his defense.

8. In further support of placing the burden of proof on the defendant, the plaintiffs also argue a series of cases[9] as holding that "the purchaser of copyright works for resale has a duty of inquiry as to their legitimacy." The issue decided in those cases, however, is not the same issue presently under consideration. There, the courts were faced with a substantive issue, i. e., whether or not a defendant can assert as a defense to the sale of pirated copyrighted materials that he was ignorant of their infringing status. There, unlike in the case at bar, the fact that the material was pirated was not disputed. Here, the

central issue is who has the burden of proving whether or not the motion picture prints are pirated. One is a substantive issue; the other is procedural.

■ 9. In presentation of their claims of copyright infringement, the plaintiffs each presented one witness from their corporate structure. These witnesses testified that it was the established policy of their corporations not to sell or give away prints and that their distribution systems for prints were designed to effect this policy. However, the testimony consisted primarily of generalities, and there were significant gaps in the experience and knowledge of each of the plaintiffs' witnesses. No comprehensive system of accountability for the control of plaintiffs' motion picture prints was ever established by the plaintiffs' evidence. In defense, the defendant presented evidence of numerous transactions entered into by the plaintiffs transferring control of prints to other parties under conditions which the defendant claims makes those transfers "first sales" within the interpretation of Section 27 of the Act. From an examination of the circumstances surrounding these transactions and from other evidence adduced at the trial, the Court finds that they legally constitute "first sales" under Section 27 of the Copyright Act. See, *Harrison v. Maynard, Merrill & Co.,* 61 F. 689 (2d Cir. 1894); *Kipling v. G. P. Putnam's Sons,* 120 F. 631 (2d Cir. 1903); *United States v. Wells,* 176 F.Supp. 630 (S.D. Tex. 1959); *Independent News Co. v. Williams,* 293 F.2d 510 (3rd Cir. 1961).

10. After duly considering and weighing the evidence as presented at trial, the Court reaches the clear conclu-

---

8. *Avco Embassy Pictures Corp. v. Don Korshnak,* C.A.Nos. 72–95, 72–158, 73–5 (M. D.Pa. Oct. 11, 1974). A copy of this order is attached hereto as Appendix B.

9. *Shapiro, Bernstein & Co., Inc. v. H. L. Green Co.,* 316 F.2d 304 (2d Cir. 1963); *Shapiro, Bernstein & Co., Inc. v. Goody,* 248 F.2d 260 (2d Cir. 1957); *De Acosta v. Brown,* 146 F.2d 408 (2d Cir. 1944).

sion that the plaintiffs have failed to meet their burden of proof with respect to the alleged copyright infringements by the defendant in that they have not shown by a preponderance of the evidence that the motion picture prints listed in Appendix A have not been the subject of "first sales" within the meaning of Section 27 of the Copyright Act.

■ 11. The Court is likewise of the opinion that the plaintiffs have failed to prove a case against the defendant on a theory of unfair competition as asserted in their second claim for relief. *Independent News Co. v. Williams*, 184 F.Supp. 877 (E.D.Pa.1960), aff'd 293 F.2d 510 (3rd Cir. 1961).

A decree will be entered in accordance herewith.

## APPENDIX A

The following is a list of the film titles on which the various plaintiffs allege infringement. Those designated by asterisk (*) are the films which the defendant admits having acquired and sold prints.

AMERICAN INTERNATIONAL PICTURES, INC.

How to Stuff a Wild Bikini
* Secret Agent Fireball
Sergeant Deadhead
Spy in Your Eye
Tank Battalion

COLUMBIA PICTURES CORPORATION

A Tornado in the Saddle
* The Best of Enemies
* The Big Boss
California Conquest
Cry of the Werewolf
* The Devil at 4 O'Clock
The Devil's Henchmen
* The Family Secret
* Fire Over Africa
For Singles Only
From Here to Eternity
* The Gallant Blade
The Gamma People
Jesse James vs The Daltons
Knock On Any Door
Lost Horizon
* Mad Room
Major Dundee
* The Man Inside
The Man Who Turned to Stone
* Miami Expose
* Mission Over Korea
Mister Soft Touch
* The Mob
My Sister Eileen
* Odongo

## COLUMBIA PICTURES CORPORATION—Continued

\* Okinawa
One Girl's Confession
\* The Palomino
Reprisal
Rough, Touch and Ready
She's a Sweetheart
She Wouldn't Say Yes
Smith of Minnesota
Sweetheart of the Campus
\* They Came to Cordura
\* Tokyo Joe
Twentieth Century
\* The Twenty-Seventh Day
When You're Smiling
You Can't Take it With You
Jazz Boat
Fighting Rangers

## METRO–GOLDWYN–MAYER, INC.

The Bad and the Beautiful
David Copperfield
Laurel and Hardy's Laughing 20's
The Loved One
Mutiny on the Bounty (1st Version)
Mutiny on the Bounty (2nd Version)

## TWENTIETH CENTURY–FOX FILM CORPORATION

Air Patrol
All About Eve
\* Anastasia
\* Berlin Correspondent
Destination Gobi
\* Eve of St. Mark
Fate is the Hunter
For Heaven's Sake
Frankenstein Created Woman
Grapes of Wrath
\* How to Marry a Millionaire
I Like Money
Kangaroo
King of the Kyber Rifles
\* Let's Make it Legal
Love is a Many Splendored Thing
Miracle on 34th Street
Nancy Steele is Missing
\* The Other Woman
Right to the Heart
The Sad Horse
Snow White and the Three Stooges
Somewhere in the Night

TWENTIETH CENTURY–FOX FILM CORPORATION—Continued

Thirty Years of Fun
Thunder in the Valley
Sing Boy Sing
Voyage to the Bottom of the Sea
* Wake Up and Dream
Where do We Go From Here
Wild Geese Calling
Young Guns of Texas
* You're My Everything
Second Chance
Sing Baby Sing
The Tomboy

UNITED ARTISTS CORPORATION
* Big House, U.S.A.

UNIVERSAL PICTURES CO., INC.

* Abbott and Costello Meet the Mummy
All Quiet on the Western Front
The Bank Dick
* Bride of Frankenstein
Destry Rides Again (Version #1)
Destry Rides Again (Version #2)
Dracula
* Flying Cadets
Frankenstein
Frankenstein Meets the Wolf Man
Green Hill
* House of Horrors
Illegal Entry
The Invisible Man
* The Invisible Man's Revenge
Magnificient Obsession
The Mummy
My Little Chickadee
* Mystery of Marie Roget
* Nightmare
One Way Street
* Road to Reno
Slim Carter
* Star in the Dust
* Winning
Yes Sir, That's My Baby
You Can't Cheat an Honest Man

WALT DISNEY PRODUCTIONS

* Never a Dull Moment
* Emil and the Detective
* The Sword and the Rose

APPENDIX B

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AVCO EMBASSY PICTURES CORP., WARNER BROS., INC. AND PARAMOUNT PICTURES CORPORATION<br>v.<br>DON KORSHNAK | NO. 72–95 CIVIL |
| COLUMBIA PICTURES INDUSTRIES, INC.<br>v.<br>DON KORSHNAK | NO. 72–158 CIVIL |
| TWENTIETH CENTURY–FOX FILM CORP., UNITED ARTISTS CORP., and WALT DISNEY PRODUCTIONS<br>v.<br>DON KORSHNAK | NO. 73–5 CIVIL |

---

## MEMORANDUM AND ORDER

Plaintiffs, seven motion picture distributors, have brought these suits seeking an injunction and damages against defendant and charge him with securing copies of motion pictures for which they own the copyrights [1] thereto, and selling, leasing and trading them without their consent. Trial without a jury was held on March 11, 1974, and subsequently both parties filed requests for findings of fact and conclusions of law.

The copyright law of 1909, 35 Stat. 1075, as amended 17 U.S.C. § 1 et seq., provides that the author, maker or creator of artistic property which has been properly copyrighted, has the exclusive right to exhibit, rent, sell, license, reproduce or otherwise deal in his creation. In the case of motion pictures, this protection extends to prohibiting the copying of such pictures. 17 U.S.C. §§ 1 and 5. A motion picture copyright owner is entitled to an injunction and damages from anyone who infringes on such right by copying selling, exhibiting, licensing or renting the motion pictures copyrighted. 17 U.S.C. § 1. The Supreme Court has defined "infringement" of a copyright as being " . . . delineated in a negative fashion by the § 1 enumeration of rights." And thus, "(i)f a person without authorization from a copyright holder, puts a copyrighted work to a use within the scope of one of these 'exclusive rights,' he infringes the copyright." *Fortnightly Corp. v. United Artists*, 392 U.S. 390, 394, 88 S.Ct. 2084, 2086, 20 L.Ed.2d 1176 (1968). While defendant's operation in selling, renting and trading copies of plaintiffs' films varies in some details, he does not claim that he received authorization from plaintiffs to do so. Rather, he argues that his actions in dealing with films for which the plaintiffs hold the copyrights are protected by § 27 of the Act 17 U.S.C. § 27, which provides, inter alia, " . . . nothing in this title shall be deemed to forbid, prevent, or restrict the transfer of any copy of a copyrighted work the possession of which has been lawfully obtained."

---

1. It is not disputed that plaintiffs have properly registered their copyrights with the United States Copyright Office.

Defendant's theory is that he obtained copies lawfully from third parties who, presumably, came into possession of copies distributed by plaintiffs to the Armed Forces, churches, schools, television studios, directors, producers, stars and, in some instances, to dealers who melt the film in order to extract a valuable component known as silver halide. However, there is no competent evidence shoring up defendant's contention that his suppliers received the copies in question here through any such sources. Moreover, the identification of his two principal suppliers was vague and, at the very least, suspicious. They were described as coming from New York or New Jersey; being known as Norman Eschenback and James Eschenback; and sold their wares roadside or at motels and restaurants in those states. This falls woefully short of establishing lawful possession and I conclude that § 27 affords no protection to defendant.

Plaintiffs' evidentiary efforts were directed at showing that in order to protect their copyrights, an elaborate system of distribution has been devised and utilized to closely monitor the location of their motion pictures, and to insure that no films are sold to any parties. This evidence revealed that licensed use of the film is strictly enforced; that damaged prints are destroyed; that films are lost or stolen, although not often; and that only on infrequent occasions are licensees authorized to make copies of the films, provided that these reproductions are then destroyed after use. The thrust being to show that plaintiffs never transferred title to these films and, at most, licensed the right to exhibit for a limited period so that no one, defendant included, could validly claim that prints in their possession were legally obtained. This evidence offers further support to the conclusion which I make that defendant's suppliers had not acquired lawful possession.

As to the actual transactions engaged in by defendant, I find that defendant rented and delivered to Clarks Summit State Hospital the motion pictures ALL HANDS ON DECK, LOVE IS A BALL, LURE OF THE WILDERNESS, RUNNING TARGET, CATTLE EMPIRE, SECRET OF PURPLE REEF, FRECKLES, and BIG COUNTRY; that he rented and delivered to White Haven State School the motion pictures DISORDERLY ORDERLY, YOURS, MINE AND OURS, MONKEYS GO HOME, BROKEN LAND, I'LL TAKE SWEDEN, MY SIX LOVES, ALL HANDS ON DECK, ENSIGN PULVER, THOSE CALLOWAYS, PRIVATE NAVY OF SGT. O'FARRELL, FITZWILLY, FRECKLES, and OUT OF TOWNERS; that he sold or traded the motion pictures CANADIANS, LURE OF THE WILDERNESS, SATAN NEVER SLEEPS, BEAST OF HOLLOW MOUNTAIN, BROKEN LAND, SECRET OF PURPLE REEF, FIERCEST HEART, RUNNING TARGET, LOVE IS A BALL, and BIG COUNTRY; that he sold or traded under the fictitious name "Ingo Films" the motion pictures DIVORCE AMERICAN STYLE, GAMMA PEOPLE, CATCH AT STRAWS, KNOWN BUT TO GOD, I'LL MAKE THE ARREST, LIVE BAIT, THE FACE, FITZWILLY, WILL SUCCESS SPOIL ROCK HUNTER?, CATTLE EMPIRE, O'HENRY'S FULL HOUSE (2 prints), GIFT OF MAGI, CRY FOR HAPPY, PRINCE OF PIRATES, HER FIRST ROMANCE, HAMMERHEAD, FRECKLES, KING OF THE KHYBER RIFLES, PRUDENCE AND THE PILL, BARBARIAN AND THE GEISHA, BRIGHAM YOUNG, OXBOW INCIDENT, and THE MUDLARK; that he has in his possession the motion pictures CROSS HAIRS and THOSE CALLOWAYS. All of this without plaintiffs' permission and in violation of their rights under the copyright laws.

The foregoing shall constitute findings of fact and conclusions of law; Rule 52, Fed.R.Civ.P; and accordingly, I find that the defendant has infringed the copyrights owned by plaintiffs to

**940**

the films involved in violation of the copyright laws. The sole question remaining is the relief to which plaintiffs are entitled. The Court desires that this issue be specifically addressed by the parties. Therefore, it is ordered that all parties to this action shall provide this Court by October 30, 1974, with briefs, affidavits and other memoranda addressing the question of the amount of damages and how it is to be ascertained as well as any other relief that may be appropriate.

/s/ William J. Nealon
United States District Judge

Dated: October 11, 1974